387 So.2d 487 (1980)
In re ESTATE OF Helen I. RUSSELL, Deceased.
No. 79-177.
District Court of Appeal of Florida, Second District.
August 20, 1980.
*488 Jack G. Williams of Wilson & Williams, Clearwater, for appellant.
C. Richard Nail, Clearwater, for appellee.
PER CURIAM.
Helen Russell died on May 7, 1976, leaving a will which bequeathed one half of her estate to her son, Kenneth Smith, and the other half to her stepchildren Robert Russell, Ronald Russell and Patricia Russell. The estate consisted entirely of personal property. The court appointed Mr. Smith personal representative of the estate.
Mr. Smith was unable to locate the stepchildren of Mrs. Russell, and so the court appointed a guardian ad litem to protect the interests of the unlocated beneficiaries. The guardian was also unable to locate the three Russell children. Mr. Smith then petitioned the court for an order determining beneficiaries and for instructions as to the distribution of the estate. Following a hearing, the court made the following findings of fact:
1. Robert Russell, Ronald Russell and Patricia Russell are entitled under the will to one half of the estate.
2. The whereabouts of these beneficiaries are unknown.
3. Kenneth Smith is the sole heir at law of the decedent and would under intestate succession be entitled to the entire estate.
4. The vast majority of assets of the estate consists of a bequest to Mrs. Russell from her father's estate, Mr. Smith's grandfather.
On these findings, the court ordered that one half of the residue of the estate after payment of all reasonable costs and expenses be paid to Mr. Smith and that the remaining one half of the estate be paid to the clerk of the circuit court and disposed of pursuant to the terms of Section 733.816, Florida Statutes (1977).[1] From this order, *489 Mr. Smith filed a timely notice of appeal. The guardian ad litem is the appellee.
Mr. Smith contends that he is entitled to receive the entire estate. He points to Section 732.101, Florida Statutes (1977), which provides that "any part of the estate of a decedent not effectively disposed of by will passes to the decedent's heirs as prescribed in the following sections of this code," and argues that because no one can locate the people to whom one half of the estate should go, the will does not effectively dispose of that portion of the estate. Hence, as the sole heir at law he is entitled to receive those funds under Section 732.103(1), Florida Statutes (1977).
We cannot accept this argument. An ineffective disposition under Section 732.101 is one which is legally ineffective rather than one where a specified beneficiary under the will cannot be found. Moreover, Section 733.816 clearly contemplates the inability to locate the beneficiary. The applicable funds are safeguarded for a ten-year period to give the beneficiary the opportunity to make his whereabouts known and to collect the bequest. In the meantime if it is shown that he predeceased the testator, the person entitled to the bequest under the antilapse statute[2] can claim the funds. If on the other hand he outlives the testator but dies thereafter, his heirs can obtain the funds within the ten-year period.
Absent a showing that the beneficiary has predeceased the testator, an unclaimed bequest has not lapsed; it has simply failed because the lawful recipient is unavailable to receive it. See In re Kuhn's Estate, 248 Wis. 475, 22 N.W.2d 508 (1946). Where funds remain unclaimed because a beneficiary under the will cannot be located, we question the wisdom of escheating the bequest when there are other beneficiaries or heirs available to take. However, the statute is clear and it is up to the legislature to provide for an alternative disposition of the funds.
AFFIRMED.
HOBSON, Acting C.J., and GRIMES, J., concur.
OTT, J., concurs specially with opinion.
OTT, Judge, Specially concurring.
I am forced to concede that the literal thrust of Section 733.816, Florida Statutes, gives the state the right to confiscate that portion of a decedent's estate left to a beneficiary who cannot be located. However, I cannot believe that the Legislature ever intended a result so contrary to the deeply ingrained rule that escheat is fundamentally abhorrent and should occur only when a decedent leaves no heirs. § 732.107, Fla. Stat.; Johnson v. Wilson, 48 Fla. 76, 37 So. 179 (1904). My remarks here are motivated by the hope that they may engender an ameliorating response in the Legislature, not only as to this particular section, but also in not enacting additions or changes to substantive rights while undertaking to codify and consolidate existing law. Changes in the law which affect substantive rights should be deliberately undertaken, individually considered, openly publicized and clearly expressed.
The theory behind Section 733.816 seems to be that in the absence of contrary proof it must be presumed that legatees named in a will survived the decedent; that consequently the bequest vested and, if neither the legatees nor their heirs come forward within ten years, escheat of their estates *490 can properly be ordered. The problem with that rationale is that no matter how you slice it the end result is unchanged  part of the decedent's estate passes directly into the state coffers. I cannot accept or condone escheat when, as here, an heir survived the decedent and was obviously the main object of her bounty.
Granted, difficulties arise when legatees cannot be located  but the problems are not insurmountable. I believe that with slight modification the statute could fulfill the obvious legislative purpose of (1) giving missing heirs a reasonable opportunity to appear and claim their legacies, while (2) permitting the probate of estates to be closed without undue delay, and yet at the same time avoid the unpalatable prospect of government seizure of private property.
When the beneficiary named in a will fails to survive the testator, we generally call such failure of the testamentary gift a "lapse." In a broader sense, however, it can be said that a lapse occurs whenever consummation of a testamentary scheme is frustrated by some deficiency or failure on the part of the donee. In re Lane's Estate, 186 So.2d 257 (Fla. 2d DCA 1966); 80 Am.Jur.2d 716; 18 Fla.Jur.2d 295. I can think of no valid reason why the failure of a legatee to appear and claim his inheritance, after all reasonable means of notifying him have been utilized, should not result in a lapse, a "falling back of the gift into the estate" of the donor. Proceedings in rem quite commonly adjudicate rights of absent parties, who are bound so long as due process has been observed. Ch. 49, Fla. Stat. I see no constitutional barrier to a determination that an unclaimed testamentary gift has lapsed, particularly where title has never passed to the missing legatee. 31 Am.Jur.2d 128.
The legislature could create a "statutory lapse" of gifts to beneficiaries who cannot be located, so that at the end of the ten year period a "lapse" would occur nunc pro tunc to the date of decedent's death. Where such "statutory lapse" would result in escheat, then the statute would postpone it for ten years, within which time any lawful owner may establish entitlement to the property. Where such "statutory lapse" would result in the lapsed gift going to other beneficiaries, then the distribution to such other beneficiaries would be postponed for ten years unless there is earlier proof of an actual lapse. For example, the heirs at law were held entitled to a gift to a legatee who hadn't been "heard of" for 35 years. In re Wilson's Estate, 186 So.2d 283 (Fla. 1st DCA 1966).
I have to agree that under the statute as it presently reads the court below had no alternative but to order the deposit of the funds. But appellant should be entitled to have the legacies distributed to him at the end of the ten year waiting period, or at an earlier date should he be able to establish the factors which would support a finding that the gifts lapsed and are subject to his sole claim. To me that would be highly preferable to an escheat of the property to the state.
Quite frankly I would have "legislated" a new form of "lapse" in this case had I been able to persuade a majority of the court.
I recognize that careful will drafting can prevent such consequences, but that, in my opinion, does not justify enhancing and facilitating the confiscatory right of government.
NOTES
[1] 733.816 Disposition of unclaimed funds held by personal representatives. 

(1) In all cases in which there are unclaimed funds in the hands of a personal representative that cannot be distributed or paid to the lawful owner because of inability to find him or because no lawful owner is known, the court shall order the personal representative to deposit the funds with the clerk and receive a receipt, and the clerk shall deposit the funds in the registry of the court to be disposed of as follows:
(a) If the value of the funds is $50 or less, the clerk shall post a notice for 30 days at the courthouse door giving the amount involved, the name of the personal representative, and the other pertinent information that will put interested persons on notice.
(b) If the value of the funds is over $50, the clerk shall publish the notice once a month for 2 consecutive months in a newspaper of general circulation in the county.
After the expiration of 6 months from the posting or first publication, the clerk shall deposit the funds with the State Treasurer after deducting his fees and the costs of publication.
(2) Upon receipt of the funds, the State Treasurer shall deposit them to the credit of the State School Fund, to become a part of the school fund. All interest and all income that may accrue from the money while so deposited shall belong to the fund. The funds so deposited shall constitute and be a permanent appropriation for payments by the State Treasurer in obedience to court orders entered as provided by subsection (3).
(3) Within 10 years from the date of deposit with the State Treasurer, on written petition to the court that directed the deposit of the funds and informal notice to the Department of Legal Affairs, and after proof of his right to them, any person entitled to the funds before or after payment to the State Treasurer and deposit as provided by subsection (1) may obtain an order of court directing the payment of the funds to him. All funds deposited with the State Treasurer and not claimed within 10 years from the date of deposit shall escheat to the state for the benefit of the State School Fund.
[2] § 732.603, Fla. Stat. (1977).