492 So.2d 422 (1986)
Nancy ESGRO, As Personal Representative of the Estate of Angelo Esgro, Petitioner,
v.
James T. TREZZA, M.D., and James T. Trezza, M.D., P.A., Respondents.
No. 85-2847.
District Court of Appeal of Florida, Fourth District.
July 16, 1986.
Rehearing and Certification Denied August 27, 1986.
Stanley M. Rosenblatt of Stanley M. Rosenblatt, P.A., Miami, for petitioner.
Alan D. Sackrin of Law Offices of Norman S. Klein, P.A., North Miami Beach, for respondent.
PER CURIAM.
Petitioner Nancy Esgro seeks review by petition for writ of certiorari of an order granting respondent's motion to exhume the body of her husband, Angelo Esgro. We deny the petition.
On April 12, 1984, respondent diagnosed the decedent Angelo Esgro as having angina, congestive heart failure, and chronic obstructive lung disease. Respondent prescribed certain medications and sent the decedent home. Two or three days later, the decedent collapsed at home and was brought to Memorial Hospital, dead on arrival. Respondent stated on the death certificate that the cause of death was cardiac arrest.
Approximately seven months later, petitioner sued respondent for negligence. Eight months later, respondent filed a motion to exhume the decedent's body for an autopsy. Respondent offered to forego exhumation if the death certificate which he completed would not be used against him. The trial court granted respondent's motion to exhume the decedent's body and then granted petitioner's motion to stay the order to permit this court to rule on this petition for writ of certiorari.
In our view petitioner has not satisfied the requirements of a petition for writ of certiorari.
The trial court could have provided supportive language for its position, rather than issuing a short order wherein it said in essence that the plaintiff was seeking damages by making the cause of death an issue. Perhaps no better language is that found in Life Investors Insurance Company *423 of America v. Heline, 285 N.W.2d 31 (Iowa 1979):

See also Wigmore, supra, at 197-98, quoted in Jarvis, 244 Iowa [1025] at 1035, 58 N.W.2d [24] at 29,2 where the author states:
The exhumation or the autopsy of a corpse, when useful to ascertain facts in litigation, should of course be performed. Reverence for the memory of those who have departed does not require us to abdicate the high duty of doing justice to the living... . [Emphasis in original.]
2 The quote was actually from an earlier edition of the treatise, but the language was not altered by the McNaughton revision.
Id. at 34.
We have no pertinent disinterment statute here. Perhaps we should. Accordingly, the trial court was exercising its discretion when it acted upon the motion to disinter.
The deposition of Dr. Wright, the Broward County Medical Examiner, revealed that there was a "good possibility" that the subsequent autopsy would be revealing. Perhaps more telling is his opinion that the possibility of the deceased's having had a myocardial infarction is "fairly remote."
It may well be that the autopsy will settle the cause of death, once and for all. If a trial court is told that there is a good possibility of that occurring, as a reviewing court, we should not vitiate that judgment.
HERSEY, C.J., and GLICKSTEIN, J., concur.
DELL, J., dissents with opinion.
DELL, Judge, dissenting.
I respectfully dissent because I do not believe exhumation should be ordered in the absence of a clear showing that there is a strong likelihood that it will produce the evidence being sought.
Respondent's motion to exhume the body should be treated as a discovery request under Rule 1.350, Florida Rules of Civil Procedure. Rule 1.280(b)(1), Florida Rules of Civil Procedure, defines the scope of discovery permitted by Rule 1.350:
(1) In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. [Emphasis added.]
Other authorities have recognized that the underpinning of the court's authority to order such discovery in exhumation cases is the need for, and probative value of, the exhumed evidence. 8 J. Wigmore, Evidence in Trials at Common Law § 2221 at 197-98 (McNaughton rev. ed. 1961). When ruling in disinterment cases, courts must apply special considerations attending such unique and sensitive subject matters. According to one authority:
Disinterment for the purpose of examination or autopsy should not be ordered unless it is clearly established that good cause and urgent necessity for such action exist. An order should not be made except on a strong showing that the facts sought will be established by an examination or autopsy. In the search for truth, the problems of religion, the wishes of decedent, the sensitivities of loved ones and friends, or even the elements of public health and welfare, should not be disregarded.
25A C.J.S. Dead Bodies § 4(3), at 506 (1966).
In Ullendorff v. Brown, 156 Fla. 655, 24 So.2d 37 (1945), the Florida Supreme Court acknowledged the propriety of disinterment where the issue of heirship could only be *424 disproved by an examination of the body of the decedent. The court said:
If in the course of ascertaining heirship in a proceeding held in the probate court for that purpose, it is shown to the satisfaction of the probate judge that the issue of heirship can be disproved by examination of the body of the decedent for the purpose of proving that she had never given birth to a child, and that such issue is material and can be refuted by no other evidence, then we think it entirely within the power and province of the probate judge having jurisdiction, in the exercise of a sound judicial discretion and for the purpose of proving justice and preventing fraud, to enter an order directing that the body be exhumed and an autopsy be performed for such purpose... .
Id. at 40 (emphasis supplied).
It appears in Ullendorff that the probate judge had evidence before him which established that the issue of heirship could be disproved by the examination of the body of the decedent, and that the issue before the court could not be refuted by any other evidence.
With all due respect to the majority, the record simply does not demonstrate the existence of a reasonable likelihood that exhumation will result in the production of admissible evidence. Respondent has shown neither the urgent necessity for the exhumed evidence, nor its probative value. Dr. Wright's testimony suggests that other evidence refuting respondent's statement as to the cause of decedent's death is available; namely, decedent's medical history and the manner in which he died. The possibility that admissible evidence might be produced as a result of the autopsy should not furnish a sufficient basis to support an order of exhumation. Here, respondent failed to show the existence of a reasonable likelihood that the autopsy would disclose the cause of the decedent's death, that the exhumation is reasonably calculated to lead to the discovery of admissible evidence, or that there is an urgent necessity for the exhumed evidence to resolve an issue which cannot be resolved by other evidence. In these circumstances, the order directing exhumation should be quashed.